FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 21, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHAYNEL K.,[1]

              Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner
of Social Security,[2]

              Defendant.

No.    4:18-CV-5197-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions. ECF Nos. 11 & 18. Plaintiff Shaynel K. appeals a denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by improperly 1)

---

[1] To protect the privacy of the social-security plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

weighing the medical-opinion evidence; 2) discounting Plaintiff's symptom reports; and 3) determining that there was no material evidence of change in Plaintiff's condition(s) since the prior ALJ decision in 2012 and therefore erred at steps four and five.[3] In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies Defendant's Motion for Summary Judgment, ECF No. 18.

---

[3] In Plaintiff's opening brief, Plaintiff states, "The ALJ failed to meet his step five burden by relying on vocational testimony that was not based upon the new and worsened condition of Plaintiff." ECF No. 11 at 18. The Commissioner correctly highlights that the ALJ made a step four non-disability finding, as well as an alternative step-five finding. ECF No. 18 at 12. The Commissioner therefore argues that by only referring to step five, and not step four, Plaintiff waived arguing that the ALJ erred at step four. While Plaintiff did not refer to step four, the Court finds that Plaintiff did not waive a step-four argument, as the essence of Plaintiff's argument—that the ALJ erred by relying on the 2012 residential functional capacity (RFC) to find that Plaintiff was capable of work—was articulated in Plaintiff's opening brief and serves as a basis to challenge both the ALJ's step-four and step-five findings. The Commissioner was afforded a full and fair opportunity to respond to this argument.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is

---

[4] 20 C.F.R. § 416.920(a).

[5] *Id.* § 416.920(a)(4)(i).

[6] *Id.* § 416.920(b).

[7] *Id.*

[8] *Id.* § 416.920(a)(4)(ii).

[9] *Id.* § 416.920(c).

[10] *Id.*

[11] *Id.* § 416.920(a)(4)(iii).

conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's RFC.[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

---

[12] 20 C.F.R. § 416.920(d).

[13] *Id.* § 416.920(a)(4)(iv).

[14] *Id.*

[15] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[16] 20 C.F.R. § 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

## II.    Factual and Procedural Summary

Plaintiff filed a prior application for disability in 2010.[19] That application was denied by an ALJ in 2012.[20] Then on April 2, 2015, Plaintiff filed a new Title XVI application for supplemental security income benefits.[21] This claim was denied initially and upon reconsideration.[22] A video administrative hearing was held before Administrative Law Judge Jesse Shumway.[23]

The ALJ found that Plaintiff rebutted the presumption of continuing nondisability by showing changed circumstances affecting the issue of disability with respect to the unadjudicated period.[24] Then in denying Plaintiff's disability claim, the ALJ made the following findings:

- There was no new and material evidence relating to several findings made by the prior 2012 ALJ decision denying disability and therefore the ALJ was bound by those findings;

---

[19] AR 15.

[20] AR 114-34.

[21] AR 15, 242-47, & 257-63. Plaintiff's April 2, 2015 application begins the relevant alleged period of disability under review. *See* 20 C.F.R. § 416.335.

[22] AR 166-71 & 174-78.

[23] AR 88-113.

[24] AR 18.

- Step one: Plaintiff had not engaged in substantial gainful activity since April 2, 2015, the application date;

- Step two: Plaintiff had the following medically determinable severe impairments: fibromyalgia; gastroesophageal reflux disease (GERD); obesity; lumbar degenerative disc disease; cognitive disorder; depressive disorder; borderline intellectual functioning; posttraumatic stress disorder (PTSD); borderline personality disorder; and anxiety disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: as there was no new and material evidence resulting in a change of Plaintiff's RFC from the prior 2012 ALJ decision, Plaintiff continued to have the RFC to perform light work and:

> She can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. All other postural activities are at occasional. She should avoid concentrated exposure to extreme cold, respiratory irritants, and hazards. She is able to understand, remember, and carry out simple, repetitive, and routine instructions. Her attention and concentration may wax and wane, but she is able to maintain attention and concentration at productive levels for the 2-hour intervals generally required between regularly scheduled breaks. She should work where there is minimal use of judgment or decision making required. She should avoid social interactions with the public and have no more than minimal interaction with coworkers and supervisors. She should work essentially isolated.

- Step four: Plaintiff was capable of performing past relevant work as a housekeeper/cleaner and electronics worker;

- Step five: alternatively, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform; and therefore,

- Plaintiff was not under a disability as defined by the Social Security Act since the April 2, 2015 application.[25]

When assessing the medical-opinion evidence, the ALJ gave:

- partial weight to the reviewing opinions of the state agency psychological consultants, Diane Fligstein, Ph.D., and Barney Greenspan, Ph.D.;

- little weight to the reviewing opinion of state agency medical consultant Barry Cusack, M.D.;

- very little weight to the reviewing opinion of Daniel Neims, Psy.D., and the evaluating opinion of Philip Barnard, Ph.D.;

- no weight to an illegible 2003 possible medical source statement and to the opinions that predated Plaintiff's 2015 filing date, which weren't discussed in the 2012 ALJ Decision; and

---

[25] AR 12-35.

- the same weight to the opinions discussed in the 2012 ALJ Decision as assigned by the prior ALJ, including significant weight to the nonexamining opinion of the testifying psychological expert, Dr. Marian Martin, and no or reduced weight to the other opinions. [26]

The ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record.[27]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[28] Plaintiff timely appealed to this Court.

### III.  Standard of Review

A district court's review of the Commissioner's final decision is limited.[29] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[30] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31] Moreover, because it is

---

[26] AR 25-26.

[27] AR 24-25.

[28] AR 1-6.

[29] 42 U.S.C. § 405(g).

[30] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[31] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[32] The Court considers the entire record as a whole.[33]

Further, the Court may not reverse an ALJ decision due to a harmless error.[34] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[35] The party appealing the ALJ's decision generally bears the burden of establishing harm.[36]

---

[32] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[33] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply that evidence cited by the ALJ or by the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[34] *Molina*, 674 F.3d at 1111.

[35] *Id.* at 1115 (quotation and citation omitted).

[36] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Analysis

**A.    Medical-Opinion Evidence: The ALJ erred in evaluating the medical-opinion evidence.**

Plaintiff argues the ALJ erred by assigning very little weight to Dr. Barnard's evaluating opinion and failing to discuss Dr. Duris' evaluating opinion. The Court agrees.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[37] Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician.[38] When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[39] The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[40]

---

[37] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[38] *Id.*

[39] *Id.*

[40] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Here, Dr. Barnard conducted a psychological evaluation of Plaintiff in April 2017.[41] After completing a clinical interview, conducting a mental status examination, and reviewing a treatment note and psychiatric/psychological evaluations completed by Lawrence Moore, Ph.D. in 2003; Mark Duris, Ph.D. in 2009, 2010, and 2013; and Thomas Genthe, Ph.D. in 2011, Dr. Barnard diagnosed Plaintiff with PTSD, borderline personality disorder, and generalized anxiety disorder. Dr. Barnard found that Plaintiff's anxiety, PTSD, and difficulties with attention and concentration "would affect her ability to work on a daily basis to a marked extent" and that her "borderline personality disorder features would affect her ability to work on a daily basis to a mild extent."[42] On the check-the-box portion of the form where Dr. Barnard was to rate Plaintiff's ability to perform basic work activities over a normal workday and workweek on an ongoing, appropriate, and independent basis, Dr. Barnard opined that Plaintiff:

- had no or mild difficulties learning new tasks, making simple work-related decisions, and being aware of normal hazards and taking appropriate precautions;

- was moderately limited in her ability to understand, remember, and persist in tasks by following very short and simple instruction; perform

---

[41] AR 979-85.

[42] AR 980-81.

activities within a schedule, maintain regular attendance, and be

punctual within customary tolerances without special supervision; and

- was markedly limited in her abilities to understand, remember, and

  persist in tasks by following detailed instructions; perform routine tasks

  without special supervision; adapt to changes in a routine work setting;

  ask simple questions or request assistance; communicate and perform

  effectively in a work setting; complete a normal work day and workweek

  without interruptions from psychologically based symptoms; and set

  realistic goals and plan independently.[43]

The ALJ discounted Dr. Barnard's opinion because it was 1) on a check-the-box form with very little narrative justification for the limitations assigned; 2) inconsistent with Dr. Barnard's mental status examination; 3) based on Plaintiff's self-reports; and 4) inconsistent with the overall mental health record.[44] On this record, these findings are not legitimate reasons supported by substantial evidence.

First, while Dr. Barnard's functional opinions are set forth in a check-the-box format, this was the format offered by the opinion form itself.[45] Moreover, Dr. Barnard also completed the clinical interview, clinical findings, assessment, and

--------------------------------------------

[43] AR 981-82.

[44] AR 26.

[45] *See Garrison*, 759 F.3d at 1013 (recognizing that a check-the-box form is to be considered along with the underlying supporting evidence relied on by the provider).

mental status examination portions of the opinion form.[46] Furthermore, the ALJ gave more weight to other opinions that contained far less narrative.[47] Thus, on this record, that Dr. Barnard used a check-the-box form to identify functional limitations was not a legitimate reason supported by substantial evidence to discount his opinion.

Second, as to the ALJ's finding that Dr. Barnard's opinion was inconsistent with the conducted mental status examination, the ALJ apparently overlooked that Dr. Barnard's marked limitations were based not only on Plaintiff's purported difficulties with attention and concentration but also her anxiety and PTSD.[48] Moreover, Dr. Barnard based his opined functional limitations not only on his clinical observations, findings, and mental status exam, but also on his review of the listed psychological evaluations. Although Dr. Barnard checked that Plaintiff's thought process and content, orientation, memory, fund of knowledge, concentration, and abstract thought were within normal limits during the conducted mental status examination, Dr. Barnard also noted that Plaintiff

---

[46] *See Ghanim v. Colvin*, 763 F.3d 1154, (9th Cir. 2014) (recognizing that psychological opinions are generally based on self-reports, clinical observations, and mental examinations).

[47] AR 26 (relying on AR 143-45, 160-62).

[48] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (requiring that the ALJ reject an opinion for a reason that is responsive to the basis for the opined limitation).

incorrectly spelled "world" backwards and was unable to accomplish serial 7s. In addition, Dr. Barnard reviewed the identified prior psychological examinations, including 1) Dr. Genthe's report, which lists that Dr. Genthe found Plaintiff's ability to sustain attention, concentration, and exert mental control was in the borderline range[49]; 2) Dr. Duris' 2012 examining opinion, which indicated that Plaintiff's panic attacks, caused by reminders and unforeseen queues of intrusive recollections of trauma, effected Plaintiff's abilities to complete a normal workday/week without interruptions and persist in simple tasks, perform activities within a schedule, and adapt to changes, and communicate[50]; and 3) Dr. Duris' 2013 examining opinion, which marked that Plaintiff's concentration was not within normal limits as she was unable to count backwards by serial 3s as she was too emotional and overwhelmed.[51] Thus, while there appears to be an inconsistency on the form's face as to Dr. Barnard's clinical finding that Plaintiff would have marked limitations due to her difficulties with attention and concentration, and his checked box that her concentration was within normal limits during the mental status examination, given the other sources of information supporting Dr. Barnard's opinion, the ALJ's finding that Dr. Barnard's opinion was inconsistent with his conducted mental status examination, is not a legitimate reason supported

---

[49] AR 384.

[50] AR 442-47, 701.

[51] AR 453.

by substantial evidence to discount his opinion on this record without more analysis to provide for a meaningful review.

Third, the ALJ's decision to discount Dr. Barnard's finding that Plaintiff had deficiencies in perception and insight because it was not supported by objective findings but rather only based on Plaintiff's reports, is not a legitimate decision supported by substantial evidence. First, the ALJ apparently failed to appreciate that Dr. Barnard found that Plaintiff's insight and judgment were not within normal limits given her response to an examination question.[52] Second, as discussed previously, Dr. Barnard's opinion was not based solely on his psychological examination, which included a clinical interview and a mental status examination, but also on Dr. Barnard's review of five prior psychological examinations. As a result, Dr. Barnard's opinion cannot be discounted as being based solely on Plaintiff's self-reports.[53] Moreover, Dr. Genthe opined that Plaintiff's ability to respond appropriately to changes in the work setting was poor, and Dr. Duris opined that Plaintiff was severely limited in her ability to maintain appropriate behavior in a work setting—opinions that support Dr. Barnard's findings that Plaintiff had deficiencies in perception and insight.[54]

---

[52] AR 984.

[53] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

[54] AR 388 & 451.

Finally, the ALJ discounted Dr. Barnard's opinion because it was inconsistent with the overall mental health record. While the ALJ is tasked with weighing conflicting medical evidence, given the ALJ's above-described errors in weighing Dr. Barnard's opinion, along with the ALJ giving more weight to the opinion of the testifying medical expert (Dr. Martin) at the 2012 hearing than to any of the opinions of the examining psychological experts, the ALJ's articulation of reasons for why he weighed the medical opinion evidence as he did lacks supporting substantial evidence. Moreover, the ALJ failed to discuss or give weight to Dr. Duris' 2013 opinion,[55] an opinion that was more consistent with Dr. Barnard's opinion (and Dr. Genthe's 2011 opinion and Dr. Duris' 2012 opinion), than Dr. Martin's opinion. Although Dr. Duris' 2013 opinion predates the relevant disability period beginning in April 2015 and therefore would generally be considered of limited relevance, the ALJ erred by failing to evaluate Dr. Duris' 2013 opinion and then to consider Dr. Barnard's opinion against Dr. Duris' opinion.[56]

---

[55] AR 449-53.

[56] *See Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012) (requiring the ALJ to evaluate medical-opinion evidence that predates the alleged onset date of disability); *McQueen v. Colvin*, No. 3:15-cv-05893-JRC, 2016 WL 4009850, *2-3 (W.D. Wash. July 27, 2016) (analyzing case law discussing an ALJ's duty to consider medical evidence and opinions predating the alleged period of disability).

On this record, the Court is unable to determine that the ALJ's failure to weigh Dr. Duris' 2013 opinion and misweighing of Dr. Barnard's opinion were harmless because, if more weight is given to Dr. Barnard's opinion or weight is given to Dr. Duris' 2013 opinion, the RFC likely fails to incorporate all of Plaintiff's functional limitations. Therefore, remand is required.[57]

**B.      Plaintiff's Symptom Reports: The ALJ must reevaluate.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. Because the analysis of this issue depends, in part, on the ALJ's evaluation of the medical-opinion evidence, the Court declines to address this argument. On remand, when evaluating Plaintiff's symptom reports, the ALJ is to consider the following. First, if the ALJ discounts Plaintiff's reported psychiatric symptoms on the grounds that Plaintiff engaged in educational, social, and daily activities, the ALJ must identify how the level of these activities is consistent with the ability to engage in sustained work activities.[58] Second, if the ALJ discounts

---

[57] *See Molina*, 674 F.3d at 1119-22 (recognizing that consequential errors require remand).

[58] *See Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017); *Garrison*, 759 F.3d at 1016; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (recognizing that a claimant's ability to engage in activities that were sporadic or punctuated with rest, such as housework, occasional weekend trips, and some exercise, do not necessarily support a finding that she can engage in regular work activities).

Plaintiff's reported psychiatric symptoms because Plaintiff offered conflicting reports as to her symptoms and exaggerated her symptoms, the ALJ must be mindful as to whether Plaintiff's conflicting reports or exaggerated symptoms were caused by Plaintiff's psychiatric conditions. For instance, while Dr. Barnard noted that Plaintiff's PAI results were invalid due to exaggeration of symptomatology, Dr. Barnard still diagnosed Plaintiff with severe mental impairments and functional limitations, as well as noted that Plaintiff's mood was dysthymic.[59] Third, if the ALJ discounts Plaintiff's psychiatric symptoms because of the lack of consistent psychiatric treatment, the ALJ must consider whether Plaintiff's psychiatric conditions were expected to benefit from treatment and/or whether any reasons offered constitute good cause for failure to follow or seek treatment.[60] Fourth, the ALJ must be mindful of the timeframe of medical documentation and its relation to Plaintiff's reported symptoms. For instance, many of the medical

_____

[59] AR 980-83. *See David D. v. Saul*, --- F. Supp. 3d ----, 2019 WL 3776998, *9 (D. Or. Aug. 12, 2019) (finding an ALJ erred by discounting a medical opinion, which noted that the claimant's PAI results indicated possible exaggeration, as the opinion was reached after reviewing records, interviewing the claimant and his mother, and conducting other testing).

[60] *See Orn*, 495 F.3d at 638; SSR 16-3p ("Due to various limitations (such as language or mental imitations), an individual may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment.").

records cited by the ALJ to discount Plaintiff's reported symptoms during the alleged period of disability were before the April 2015 disability period.[61] Finally, on remand, the ALJ must consider the basis for Plaintiff's reported limitations and not discount her symptoms for nonrelevant normal findings.[62]

## C.     RFC and Steps Four and Five: The ALJ must reevaluate.

Plaintiff argues the ALJ erred at steps four and five by finding that there had been no increase in the severity of Plaintiff's conditions since the 2012 ALJ Decision and thereby adopting the prior ALJ's RFC, step-four, and step-five findings. Because the ALJ's determination that Plaintiff's psychological conditions have not increased in severity since the 2012 decision was based on an erroneous weighing of the medical evidence, on remand the ALJ is to reassess whether

--------

[61] *See* AR 24 (citing five medical records predating the relevant period of disability, AR 474, 484, 505, 543, & 767, and three medical records that were from the relevant alleged period of disability, AR 581, 814, & 913, to support the finding that Plaintiff generally denied constitutional symptoms such as fatigue and malaise, but failing to cite or discuss the five medical records from the relevant alleged disability period noting that Plaintiff appeared tired, AR 1042, 1050, 1071, 1095, & 1106.

[62] *See Ghanim*, 763 F.3d at 1164 (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that claimant performed cognitively well during examination and had a generally pleasant demeanor).

Plaintiff's psychological conditions have increased in severity since the 2012 decision and relatedly must assess whether new step four and five findings must be made. Moreover, the ALJ is to consider whether additional functional restrictions must be added, if any, to the RFC given Plaintiff's limitations with adapting and managing herself—a consideration the ALJ in 2012 was not required to make.[63]

## D. Remand for Further Proceedings

The ALJ consequentially erred by failing to provide legally sufficient reasons for discounting the opinion of Dr. Barnard and not weighing Dr. Duris' 2013 opinion. However, even if these opinions are given great weight, the record would not remain free from conflicts and ambiguities. The record as a whole creates serious doubt that Plaintiff is disabled.[64] Therefore, remand for further proceedings, rather than for an award of benefits, is necessary.[65]

On remand, the ALJ is to evaluate Dr. Duris' 2013 opinion, reweigh the medical-opinion evidence, reevaluate Plaintiff's symptom reports, reformulate Plaintiff's RFC if necessary, and conduct a new step-four (and five) analysis if

---

[63] AR 124 (listing only activities of daily living, social functioning, and concentration, persistence or pace as mental functioning considerations); *see Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (requiring the ALJ to include the work restrictions supported by substantial evidence in the record).

[64] *See Garrison*, 759 F.3d at 1021.

[65] *See Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017);

necessary. The ALJ is to consider, as appropriate, scheduling a consultative psychiatric examination, eliciting new testimony from a psychiatric medical expert, and eliciting new testimony from a vocational expert.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 21st day of November 2019.

_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge
